FILED

1 | Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
2 | **GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle, Suite 275
3 | Larkspur, CA 94939
Telephone: (415) 477-6700
4 | Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

2013 DEC -6 PM 1:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

5

6 | William B. Federman
**FEDERMAN & SHERWOOD**
7 | 10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
8 | Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com

9

*Attorneys for Plaintiff*

10

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | NANCY JEAN HOLT, derivatively    Case No. **CV13-09024 -BRO(JEMx)**
14 | on behalf of VALUECLICK, INC.

15 |         Plaintiff,       **VERIFIED COMPLAINT FOR
BREACH OF FIDUCIARY DUTY**

16

17 | vs.        **JURY TRIAL DEMANDED**

18 | DAVID S. BUZBY, JAMES A.
CROUTHAMEL, JOHN
19 | GIULIANI, MARTIN HART,
JAMES R. PETERS, JEFFREY F.
20 | RAYPORT, BRIAN A. SMITH and
JAMES ZARLEY,
21

22 |         Defendants,

23

24 | and

25 | VALUECLICK, INC.,

26

27 |        Nominal Defendant.

28

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

**INTRODUCTION**

1.      This is a verified shareholder derivative action brought on behalf of Nominal Defendant ValueClick, Inc. ("ValueClick" or the "Company").   The relevant period is from February 14, 2013 through the present (the "Relevant Period").   This action is brought against certain of ValueClick's current officers and directors for breaches of fiduciary duties and unjust enrichment.

2.      Specifically, throughout the Relevant Period, Defendants (defined below) breached their fiduciary duties owed to ValueClick and its shareholders by disseminating false and misleading statements to the investing public.

3.      Defendants ignored clear and obvious red flags of business process and managerial misconduct.  The true facts, which were known by the Defendants but concealed from the investing public during much of the Relevant Period were as follows:

(a)     that ValueClick had grown its revenues and profits over the past several quarters primarily though acquiring revenue streams and was not experiencing organic growth during the Relevant Period;

(b)     that ValueClick was not effectively integrating the Dotomi and Greystripe acquisitions, and as such, revenues and profits were not growing, exponentially or otherwise, in its Media segment;

(c)     that endemic sales execution problems in the Media segment were reducing sales;

(d)     that persistent operational weakness in ValueClick's European operations and sales were weighing down revenue growth;

(e)     that disruptions in the CJ subsidiary were driving down Affiliate Marketing revenues and preventing ValueClick from taking advantage of Google's departure from the Affiliate Marketing market; and

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

(f)     that the Note Receivable (defined below) was materially impaired and, therefore, ValueClick's assets and income were being materially overstated and its costs were being materially understated.

4.     As a result of Defendants' false statements, ValueClick's stock traded at artificially inflated levels during much of the Relevant Period. However, after the above revelations seeped into the market, the price of the Company's common shares declined substantially.  The price of ValueClick common stock plummeted ***more than 33%*** from that level to close at $21.37 per share on August 2, 2013, ***erasing more than $826 million in market capitalization***.

5.     Defendants' conduct was extremely reckless, and has resulted in substantial damages to ValueClick and its stockholders, while management and the Board have continued to reap undeserved compensation.  Defendants have also exposed the Company to civil liability as a result of a number of securities fraud class action lawsuits (the "Securities Class Action") pending against the Company and certain of its senior executive officers.  The damages to the Company include, among other things, investigatory and litigation costs, including costs for defending the Company in the Securities Class Action.  The Company is also exposed to millions of dollars of liability for alleged securities law violations.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7.     This action is not a collusive one designed to confer jurisdiction upon a court of the United States that it would not otherwise have.

8.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial portion of transactions and wrongs complained of herein occurred in this District.  Further, Defendants participated in board of director

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1  meetings or maintain executive offices in this District and have received

2  substantial compensation in this District by engaging in numerous activities and

3  conducting business in this District.  Further, ValueClick maintains its principal

4  place of business in this District.

5                                    **PARTIES**

6         9.      Plaintiff Nancy Jean Holt is a current shareholder of ValueClick and

7  has continuously held ValueClick stock during the Relevant Period and through

8  the present.   Plaintiff is a citizen of Texas.

9         10.     Nominal Defendant ValueClick is an online advertising company,

10 which provides online advertising campaigns and programs for advertisers and

11 advertising agency customers in the United States and internationally. ValueClick

12 is incorporated in the State of Delaware and headquartered in Westlake Village,

13 California. ValueClick essentially has no operations in Delaware and no

14 employees in Delaware.

15        11.     Defendant David S. Buzby ("Buzby") has been a director of

16 ValueClick since May 1999.  Buzby is a member of the Company's Audit,

17 Nominating and Governance and Compensation Committees.  Buzby is a citizen

18 of California.

19        12.     Defendant James A. Crouthamel ("Crouthamel") has been a director

20 of ValueClick since July 2007.  Crouthamel is a citizen of Pennsylvania.

21        13.     Defendant John Giuliani ("Giuliani") joined ValueClick as the

22 President of the Company's Dotomi division and a director of the Company's

23 Board in August 2011. Giuliani was named the Company's chief operating officer

24 in April 2012 and then President and Chief Executive Officer ("CEO") in

25 December 2012. From December 2005 to August 2011, Giuliani served as the

26 Chairman of the Board and CEO of Dotomi prior to ValueClick's acquisition of

27 Dotomi.  Giuliani is a citizen of Nevada.

28

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

14.     Defendant Martin Hart ("Hart") has served as a director since March 1999.  Hart is a member of the Nominating and Governance Committee and is Chairman of the Compensation Committee.  Hart is a citizen of Arizona.

15.     Defendant James R. Peters ("Peters") has been a director of the Company since July 2007.  Peters is the Chairman of the Audit Committee.  Peters is a citizen of Mississippi.

16.     Defendant Jeffrey F. Rayport ("Rayport") has served as a director of the Company since May 2002.  Rayport is a member of the Audit Committee and Chairman of the Nominating and Governance Committee.  Rayport is a citizen of Massachusetts.

17.     Defendant Brian A. Smith ("Smith") has served as a director since August 2013.  Smith is a citizen of Arizona.

18.     Defedant James Zarley ("Zarley") serves as the Chairman of the Board.  From his arrival in 1999 until May 2007, Zarley served as Chairman and CEO of ValueClick. During the period from May 2007 through May 2010, Zarley served as Executive Chairman of the Company. From May 2010 to December 2012, Zarley served as the Company's CEO. From December 2012 to March 2013, Zarley served as Executive Chairman of the Board and assumed the role of non-executive Chairman of the Board beginning in March 2013 in connection with his retirement from a full-time position with the Company.  Zarley is a citizen of Nevada.

19.     Defendants Buzby, Crouthamel, Giuliani, Hart, Peters, Rayport, Smith and Zarley are collectively referred to herein as the "Defendants."

## DEFENDANTS' DUTIES

20.     By reason of their positions as officers and/or directors, and fiduciaries of ValueClick and because of their ability to control the business and corporate affairs of ValueClick, Defendants owed ValueClick and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required

to use their utmost ability to control and manage ValueClick in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of ValueClick and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit. Each director and officer of the Company owed and owes to ValueClick and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

21. Defendants, because of their positions of control and authority as directors and/or officers of ValueClick, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with ValueClick, each of the Defendants had knowledge of material non-public information regarding the Company.

22. To discharge their duties, the officers and directors of ValueClick were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of ValueClick were required to, among other things:

(a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of the Company's business;

(b) Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements; and

(c) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

23.     Additionally, according to ValueClick's Audit Committee Charter, the purpose of the Audit Committee is, among other things, to represent and assist the Board in fulfilling its oversight responsibilities regarding the Company's financial reporting process, internal controls over financial reporting and the Company's compliance with legal and regulatory requirements.

## BACKGROUND

24.     ValueClick is an online advertising company which provides online advertising campaigns and programs for advertisers and advertising agency customers in the United States and internationally. The Company's customers include advertisers, advertising agencies and traffic distribution partners.

25.      In March 2008, ValueClick paid a record $2.9 million fine to settle Federal Trade Commission ("FTC") charges that it deceived consumers with offers of prizes to complete surveys. The FTC charged ValueClick subsidiary Hi-Speed Media with using deceptive e-mails, banner ads and pop-ups to drive consumers to its websites. The e-mails and online ads claimed that consumers were eligible for free gifts, such as laptops and iPods, and included come-ons such as "Free PS3 for survey." The FTC action alleged that consumers lured to websites by these promises were led through "a maze of expensive and burdensome third-party offers which they were required to 'participate in' at their own expense in order to receive the promised 'free' merchandise."

26.     On February 1, 2010, the Company completed the sale of its promotional lead generation marketing business. The proceeds from the sale consisted of a $45 million (face amount) five-year note receivable bearing interest at the rate of 5% (the "Note Receivable"). The estimated fair value of the Note Receivable was $32.8 million on the date of sale and it called for monthly payments amortized over a ten- year period and a balloon payment at the end of the fifth year. The sale resulted in ValueClick reporting a pre-tax gain of $1.1 million, and a $10.0 million gain net of income taxes due to an $8.9 million tax

benefit related to tax deductible goodwill that was realized upon the sale of the business.

27.     In April 2011, the Company acquired Greystripe, Inc. ("Greystripe"), a large brand-focused mobile advertising network, for $75 million.

28.     In August 2011, the Company acquired Dotomi, Inc. ("Dotomi"), a provider of data-driven, so-called intelligent display media for major retailers, for $295 million. At the time of the acquisition, Defendant Giuliani was CEO of Dotomi which was based in Chicago and had 160 employees.

29.     Both Dotomi and Greystripe operate within ValueClick's Media segment. Essentially, Dotomi tracks Internet users' personal preferences and targets advertising to them based on their personal preferences (using "cookies" implanted on Internet users' personal computers) whereas Greystripe serves advertising to users of smartphones and other touch-screen devices across all major mobile platforms (which do not accept "cookies").

30.     These acquisitions enabled ValueClick to report that annual revenues grew over 25% and that earnings grew over 30% during the past three years. By the start of the Relevant Period, ValueClick was promising that the full integration of these companies was progressing on track and that operating them together would allow ValueClick to grow revenues and profits exponentially by allowing ValueClick to track Internet users' preferences across all platforms (PC and mobile) and to sell so- called intelligent targeted advertising in a unified fashion across all platforms.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE RELEVANT PERIOD

31.     On the evening of February 13, 2013, after the close of trading, Defendants caused the Company to issue a press release announcing its financial results for its fourth quarter and fiscal year ended December 31, 2012 (the first full year following the Dotomi/Greystripe acquisitions) and its first quarter 2013

guidance (ending March 31, 2013). The press release stated that "[r]evenue met the high-end of its guidance range, while Adjusted-EBITDA and non-GAAP diluted net income per common share exceeded the high-end of their respective guidance ranges." ValueClick reported that its fourth quarter 2013 sales rose 14% over the prior year to $199.6 million, exceeding the $198.2 million the analyst community had been led to expect. The Company also reported fourth quarter 2013 non-GAAP diluted net income of $0.56 per share, up 22% from the prior year's fourth quarter and exceeding the $0.52 per share that the analyst community had been led to expect. For the Company's first quarter 2013, ValueClick said it was on track to achieve revenues of $165 million to $168 million and non-GAAP diluted net income per share of $0.39 to $0.41, above the $0.38 per share analysts had been led to expect.

32.     The press release quoted defendant Giuliani stating, in pertinent part: "We are seeing the *early results* of our initiatives to elevate our conversations with advertisers to become a more strategic and persistent marketing partner, while also *executing on our goals of strong organic growth and profitability*," and that ValueClick then "expect[ed] 2013 to be a *watershed year*."

33.     During the conference call held with investors later on the evening of February 13, 2013, Defendant Giuliani, on behalf of ValueClick, made more positive comments about the strength of its business and product offerings, and stated that its integration of Dotomi's and Greystripe's development and sales teams was proceeding on track. Specifically, Defendant Giuliani emphasized that he then "personally believe[d] [defendants had] made a good capital decision on behalf of [ValueClick's] shareholders," and that the Company had "embarked on a strategic initiative to integrate [the Company's] businesses that [would] help [them] *accelerate [ValueClick's] organic growth rate*."

34.     In response to this news, the price of ValueClick stock spiked when trading resumed on February 14, 2013 more than seven times the average daily volume over the preceding ten trading days.

35.     Shortly thereafter, Defendants Zarley and Giuliani immediately cashed in by selling their personally held ValueClick stock.   Less than a week later, on February 20, 2013, Defendant Zarley sold 196,770 shares generating proceeds of more than $5.3 million and Defendant Giuliani sold 17,161 shares on February 22 and March 1, 2013 generating proceeds of $463,680.  By March 15, 2013, Defendants Crouthamel and Rayport each sold 30,000 shares, generating proceeds of $846,960 and $ 846,664.59, respectively.  Defendant Hart sold 60,000 shares generating proceeds of approximately $1,690,200.

36.     On February 27, 2013, ValueClick filed its Annual Report on Form 10-K with the SEC. The Form 10-K was signed by Defendants Giuliani, Buzby, Hart, Rayport, Crouthamel and Peters and also certified as to its accuracy by Defendant Giuliani.   It stated that the Company had received a $4.2 million principal payment on the Note Receivable and that "[t]he carrying amount of the note receivable at December 31, 2012 [was] $29.4 million." The Form 10-K also stated in pertinent part that "[t]he Company records this note receivable at amortized cost and recognizes interest income as earned," "*[t]he Company monitors the financial condition of its debtor by reviewing quarterly financial statements of the debtor and the debtor's ability to meet its regularly scheduled payments,*" "*[f]or the year ended and as of December 31, 2012, there have been no indicators of possible credit loss*" and "*[a]s such, the Company has not recorded any allowance for credit losses associated with this note receivable*," and that "*[t]hrough the Company's review of the buyer's financial statements and its history of on-time payments, the Company determined that as of December 31, 2012 and 2011, an allowance for credit loss was not required.*"

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

37.     On May 7, 2013, after the close of trading, ValueClick reported first quarter 2013 financial results for the quarter ended March 31, 2013. The results were mixed. Revenue increased 13% to $165.4 million, but that fell short what analysts had been led to expect. Specifically, Media revenue rose to $96.3 million from $80.7 million, revenue from Affiliate Marketing increased to $38.3 million from $37.1 million, and revenue from Owned & Operated Websites grew to $31 million from $28.7 million. Meanwhile, ValueClick reported adjusted earnings of $0.42 per share, which handily beat the Company's own $0.39 to $0.41 per share guidance on February 13, 2013 and the $0.39 per share projections analysts had been led to expect. However, ValueClick only forecast second quarter adjusted earnings of between $0.38 and $0.40 per share on revenues in a range of $164 million to $175.3 million, less than the earnings of $0.41 per share on revenues of $175.3 million the analyst community had been led to expect in the quarter ending June 30, 2013.

38.     Defendant Giuliani's statements in the May 7, 2013 press release were both positive, with him now emphasizing that: "2013 [was] a transformational year for ValueClick, as *[it] raise[d] [its] long-term growth potential by integrating [its] multiple offerings and leveraging [its] core strengths in data, personalization and cross-device targeting*," while also warning that, "short-term disruptions [would] occur as [the Company] integrate[d] multiple offerings and geographies," but emphatically ensuring that: "*We are confident that our strategic initiatives will best serve the long-term interests of our advertisers and shareholders*."

39.     In the press release, Defendant Giuliani also emphasized that "[i]n addition to integration initiatives, [ValueClick was] focused . . . on capitalizing on the *unprecedented short-term opportunity* in affiliate marketing" brought about by "Google's recent decision to exit this market," which he characterized as "*a seismic shift in the competitive landscape*," stating ValueClick was then

"prioritizing resources to take **full advantage**," that "[t]he affiliate marketing industry and its customers [were] at an inflection point, and [that] ValueClick [stood] alone as the company with affiliate marketing at its core."

40.    On May 9, 2013, ValueClick filed its quarterly financial report on Form 10-Q with the SEC. The Form 10-Q stated that the Company had received a $1 million interest payment on the Note Receivable, that "[t]he carrying amount of the [N]ote [R]eceivable at March 31, 2013 [was] $29.0 million," and that "*[t]hrough the Company's review of the buyer's financial statements and its history of on-time payments, the Company determined that as of March 31, 2013 and December 31, 2012, an allowance for credit loss was not required*." The Form 10-Q was signed and certified by Defendant Giuliani.

41.    The statements referenced above were each materially false and misleading when made as they failed to disclose and misrepresented the following adverse facts which were known by Defendants or recklessly disregarded by them:

(a)    that ValueClick had grown its revenues and profits over the past several quarters primarily though acquiring revenue streams and was not experiencing organic growth during the Relevant Period;

(b)    that ValueClick was not effectively integrating the Dotomi and Greystripe acquisitions and as such revenues and profits were not growing, exponentially or otherwise, in its Media segment;

(c)    that endemic sales execution problems in the Media segment were reducing sales;

(d)    that persistent operational weakness in ValueClick's European operations and sales were weighing down revenue growth;

(e)    that disruptions in the CJ subsidiary were driving down Affiliate Marketing revenues and preventing ValueClick from taking advantage of Google's departure from the Affiliate Marketing market; and

(f)     that the Note Receivable was materially impaired and, therefore, ValueClick's assets and income were being materially overstated and its costs were being materially understated.

42.     On August 1, 2013, after the close of trading, Defendants caused the Company to issue a press release announcing its second quarter 2013 financial results for the quarter ended June 30, 2013, and issuing third quarter 2013 guidance for the quarter ending September 30, 2013.

43.     Blaming "more weakness than . . . anticipated" in Media segment sales in the second quarter, instead of the high single-digit sales growth defendants stated ValueClick was then on track to deliver on May 7, 2013, **almost halfway through the quarter**, ValueClick reported flat Media sales in the second quarter 2013. Instead of the adjusted earnings of between $0.38 and $0.40 per share on revenues in the range of $164 million to $175.3 million ValueClick had stated it was on track to achieve on May 7, 2013, ValueClick reported adjusted earnings of $0.39 per share on revenues of just $159.8 million. Additionally blaming "overall sales execution" issues that reduced Media sales in the quarter, Defendant Giuliani conceded on the conference call held that night that ValueClick "[had not] hired fast enough; [had not] deployed new folks quick enough, and [that] there [had] been an unevenness about how [ValueClick had] sold [its] product portfolio."

44.     Worse, the Company reported a 42% decline in net income — which declined to $11.9 million, or $0.15 per share in the second quarter 2013, from $20.3 million, or $0.25 per share in the second quarter 2012, due to a $22.6 million impairment charge ValueClick had to take on the Note Receivable — **or approximately 80% of the value of the Note Receivable**. According to the press release, the Company accepted just $5.5 million on the $28.1 million note, "negatively impact[ing] second quarter GAAP and non-GAAP net income per diluted common share by approximately $0.18," **or more than half of what the**

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1 | *Company otherwise would have reported in net income but for the impairment*
2 | *charge*.

3 |     45.    Warning that Media segment sales would remain muted in the third
4 | quarter 2013, ValueClick also stated that it was now projecting adjusted profits
5 | per share of just $0.39 to $0.40 per share on revenues of only $164 million to $168
6 | million in the third quarter of 2013, whereas bullish statements Defendants
7 | allowed to be disseminated had led analysts to expect profits of $0.43 per share on
8 | revenues of $180 million in the quarter.

9 |     46.    On this news, the price of ValueClick common stock plummeted
10 | *more than 33%* from that level to close at $21.37 per share on August 2, 2013,
11 | *erasing more than $826 million in market capitalization*.

12 |     47.    As a result of Defendants' false statements, ValueClick stock traded
13 | at artificially inflated levels during the Relevant Period. Not surprisingly, multiple
14 | securities class actions lawsuits have been filed against the Company and
15 | Defendant Giuliani for alleged violations of federal securities laws.

### DERIVATIVE AND DEMAND FUTILITY
### ALLEGATIONS FOR THE BOARD OF VALUECLICK

18 |     48.    Plaintiff brings this action derivatively in the right and for the benefit
19 | of ValueClick to redress injuries suffered and to be suffered by ValueClick as a
20 | result of the breaches of fiduciary duty by the Defendants.

21 |     49.    Plaintiff will adequately and fairly represent the interests of
22 | ValueClick and its shareholders in enforcing and prosecuting its rights.

23 |     50.    As a result of the facts set forth herein, Plaintiff has not made a
24 | demand on the ValueClick Board of Directors to institute this action against the
25 | Defendants. Such demand would be a futile and useless act because the Board is
26 | incapable of making an independent and disinterested decision to institute and
27 | vigorously prosecute this action.

51.     Defendants who are currently the members of the ValueClick's Board are Defendants Buzby, Crouthamel, Giuliani, Hart, Peters, Rayport, Smith and Zarley (the "Director Defendants").

**Defendants Giuliani, Zarley, Crouthamel, Rayport and Hart Each Profited Through Illegal Insider Trading**

52.     During the Relevant Period Defendants Giuliani, Zarley, Crouthamel, Rayport and Hart each sold thousands of shares of their personally held ValueClick stock while in possession of the adverse non-public information concerning the Company alleged herein.

53.     On February 20, 2013, Defendant Zarley sold 196,770 shares, generating proceeds of more than $5.3 million and Defendant Giuliani sold 17,161 shares on February 22 and March 1, 2013 generating proceeds of $463,680.  By March 15, 2013, Defendants Crouthamel and Rayport each sold 30,000 shares, generating proceeds of $846,960 and $846,664.59, respectively.  Defendant Hart sold 60,000 shares, generating proceeds of approximately $1,690,200.

54.     Defendants Zarley, Giuliani, Crouthamel, Rayport and Hart are directly interested in a demand due to their receipt of material, personal financial benefits from challenged insider trading transactions which were not shared with ValueClick shareholders.  Accordingly, demand upon them is futile.

**The Members of the Board of Directors Lack Independence**

**Defendant Giuliani Lacks Independence**

55.     Defendant Giuliani serves as the Company's CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.   For instance Giuliani received compensation of $12,679,900 million in 2012.  Because of Giuliani's employment with the Company he is not considered an independent director. ValueClick has disclosed in its SEC filings that Giuliani is not considered -- under the listing standards of the NASDAQ Global Market and rules promulgated by the SEC -- an independent director.

Thus, Defendant Giuliani is incapable of impartially considering a demand to commence and vigorously prosecute this action.

### Defendant Zarley Lacks Independence

56. Defendant Zarley is the Company's former CEO pursuant to which he received substantial monetary compensation and other benefits. Because of Zarley's previous employment with the Company he is not considered an independent director. ValueClick has disclosed in its SEC filings that Zarley is not considered -- under the listing standards of the NASDAQ Global Market and rules promulgated by the SEC -- an independent director. Thus, Defendant Zarley is incapable of impartially considering a demand to commence and vigorously prosecute this action.

### Defendant Hart Lacks Independence From Guiliani

57. Defendant Hart is a longtime director of ValueClick and colleague of Giuliani. Hart has served as a director of ValueClick for approximately fourteen years, since 1999. Thus, Defendant Hart is incapable of impartially considering a demand to commence and vigorously prosecute this action against Giuliani.

### Likelihood of Substantial Liability of the Audit Committee Defendants

58. Buzby, Peters and Rayport each serve on the Audit Committee of ValueClick's Board. As such, they will take no action against one another or the other members of the Board of Directors or the other Defendants because each member of this Committee breached important specific duties as Audit Committee members. According to ValueClick's SEC filings and Audit Committee Charter the purpose of the Audit Committee is, among other things, to monitor and oversee the quality and integrity of the Company's accounting process and system of internal controls.

59. Defendants Buzby, Peters and Rayport ignored clear and obvious red flags and in doing so breached their fiduciary duties of due care, loyalty, and good faith. Specifically, they were aware that ValueClick had grown its revenues and

profits over the past several quarters primarily though acquiring revenue streams and was not experiencing organic growth during the Relevant Period; that ValueClick was not effectively integrating the Dotomi and Greystripe acquisitions and, as such, revenues and profits were not growing, exponentially or otherwise, in its Media segment; that endemic sales execution problems in the Media segment were reducing sales; that persistent operational weakness in ValueClick's European operations and sales were weighing down revenue growth; that disruptions in the CJ subsidiary were driving down Affiliate Marketing revenues and preventing ValueClick from taking advantage of Google's departure from the Affiliate Marketing market; and that the Note Receivable was materially impaired and, therefore, ValueClick's assets and income were being materially overstated and its costs were being materially understated.

60.     The Audit Committee possesses and possessed essentially unfettered power to the Company's records and can request additional information or meet with management as it deems necessary to fulfill its responsibilities.

61.     As a result of the Audit Committee's failures, Defendants Buzby, Peters and Rayport face a substantial likelihood of liability for breaches of fiduciary duties, making any demand upon them futile.

**Additional Likelihood of Substantial Liability of the Compensation Committee Members**

62.     Defendants Buzby and Hart were at times relevant hereto members of the Company's Compensation Committee.  Pursuant to its Charter, the Compensation Committee is and was responsible for, among other things, reviewing and approving the compensation and incentive arrangements for the Company's CEO and Executive Chairman.

63.     The Compensation Committee permitted the continued compensation payments to senior executives, like Defendant Giuliani, based on misleading

statements and grossly inflated financial results, and in the process, committed corporate waste.

**Additional Likelihood of Substantial Liability of the Board of Directors**

64.     The Board members of ValueClick approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise these wrongs from ValueClick shareholders or recklessly disregarded the wrongs complained herein, and are therefore not disinterested parties.  Each of the Defendants exhibited a systematic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to extreme recklessness and bad faith.

65.     In order to bring this suit, the Board members of ValueClick would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

66.     The acts complained of constitute violations of the fiduciary duties owed by ValueClick's officers and directors and these acts are incapable of ratification.

67.     ValueClick has been, and will continue to be subjected to lawsuits for the actions described herein, including securities fraud class action lawsuits, yet the Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for ValueClick any part of the damages the Company has suffered and will continue to suffer.

68.     The actions of the Directors and the relationships between and among the Defendants as described above have impaired the Board's ability to validly exercise its business judgment and have rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands.

69.     Any suit by the directors of ValueClick to remedy these wrongs would likely expose the Defendants and ValueClick to further violations of

securities laws which could result in additional civil actions being filed against one or more of the Board members.  In light of this, they are conflicted in making any supposedly independent determination as to whether to sue themselves.

70.    Indeed, ValueClick has already expended and will continue to expend significant sums of money as a result of the illegal and improper actions described above.  Such expenditures will include, but are not limited to:

(a)    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts; and

(b)    Costs and legal fees for defending ValueClick and certain of the Defendants against private securities class action litigation arising from illegal and improper conduct alleged herein.

71.    Plaintiff has not made any demand on the shareholders of ValueClick to institute this action since demand on the shareholders would be a futile endeavor for the following reasons:

(a)    ValueClick is a publicly held company with millions of shares outstanding, and thousands of shareholders;

(b)    Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

(c)    Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

**COUNT I**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION**

72.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

73.    As alleged in detail herein, each of the Defendants had a duty to ensure that ValueClick disseminated accurate, truthful and complete information to its shareholders.

74.     Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to ValueClick shareholders materially misleading and inaccurate information through public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

75.     As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

### COUNT II
### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     Defendants owed and owe ValueClick fiduciary obligations.   By reason of their fiduciary relationships, Defendants specifically owed and owe ValueClick the highest obligation of good faith, fair dealing, loyalty and due care.

78.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

79.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, ValueClick has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

80.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

81.     Plaintiff, on behalf of ValueClick, has no adequate remedy at law.

## COUNT III
## AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMEN

82.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

83.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of ValueClick.

84.     Plaintiff, as a shareholder and representative of ValueClick, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT IV
## AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence ValueClick, for which they are legally responsible. In particular, Defendants abused their positions of authority by causing or allowing ValueClick to misrepresent material facts regarding its business.

87.     As a direct and proximate result of Defendants' abuse of control, ValueClick has sustained significant damages.

88.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

89.     Plaintiff, on behalf of ValueClick, has no adequate remedy at law.

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

## COUNT V
## AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT

90.     Plaintiff Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

91.     Defendants had a duty to ValueClick and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of ValueClick.

92.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of ValueClick in a manner consistent with the duties imposed upon them by law.   By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of ValueClick's affairs and in the use and preservation of ValueClick's assets.

93.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused ValueClick to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to ValueClick, thus breaching their duties to the Company.   As a result, Defendants grossly mismanaged ValueClick.

## COUNT VI
## AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused ValueClick to incur (and ValueClick may continue to

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

96.     As a result of this waste of corporate assets, Defendants are liable to the Company.

97.     Plaintiff, on behalf of ValueClick, has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing ValueClick to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.     Awarding to ValueClick restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1
## JURY DEMAND

2     Plaintiff demands a trial by jury.

3

4    DATED: December 6, 2013       **GREEN & NOBLIN, P.C.**

5

6

7                   By: _____

                             James Robert Noblin

8

9                 Robert S. Green

10               700 Larkspur Landing Circle, Suite 275

                 Larkspur, CA 94939

11               Telephone: (415) 477-6700

                 Facsimile: (415) 477-6710

12

13               William B. Federman

                 FEDERMAN & SHERWOOD

14               10205 N. Pennsylvania Avenue

                 Oklahoma City, OK 73120

15               Telephone: (405) 235-1560

16               Facsimile: (405) 239-2112

                 Email: wbf@federmanlaw.com

17

18               *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NANCY JEAN HOLT, derivatively on behalf )
of VALUECLICK, INC. )
)
)
Plaintiff, )   Civil Action No.
)
)
v. )
)
)
DAVID   S.   BUZBY,   JAMES   A. )
CROUTHAMEL,   JOHN   GIULIANI, )
MARTIN  HART,  JAMES  R.  PETERS, )
JEFFREY F. RAYPORT BRIAN A. SMITH )
and JAMES ZARLEY, )
)
Defendants, )
)
)
and )
)
VALUECLICK, INC., )
)
)
Nominal Defendant. )
)

VERIFICATION AND AFFIDAVIT

STATE OF _TEXAS_      )
                      ) ss.
COUNTY OF _HARRIS_    )

I, Nancy Jean Holt, do hereby depose and say that:

1.     I am and have been the holder of the common stock of ValueClick, continuously

since prior to the wrongs complained of.

2.     I have read the Complaint to be filed in the above-captioned action, and the facts

alleged therein are true and correct to the best of my knowledge, information and belief.

3.   I have not received, been promised or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action except for:

(a)   such damages or other relief as the Court may award me as a member of the class;

(b)   such fees, costs or other payments as the Court expressly approves to be paid to or on behalf of myself; or reimbursement, paid by my attorneys, of actual and reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

NANCY JEAN HOLT

SWORN TO AND SUBSCRIBED before me a Notary Public in the State and County so noted on December 4, 2013.

NANCY BELMONTES
Notary Public, State of Texas
My Commission Expires
January 11, 2017

Notary Public, State of TEXAS

My Commission Expires: January 11, 2017

2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Beverly Reid O'Connell _____ and the assigned Magistrate Judge is _____ John E. McDermott _____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-cv-09024-BRO(JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ December 6, 2013 _____
Date

By  APEDRO _____
Deputy Clerk

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

|  |  |
|---|---|
| NANCY JEAN HOLT, derivatively on behalf of VALUECLICK, INC.<br><br>*Plaintiff(s)*<br><br>v.<br><br>DAVID S. BUZBY, JAMES A. CROUTHAMEL, JOHN GIULIANI, MARTIN HART, JAMES R. PETERS, JEFFREY F. RAYPORT, BRIAN A. SMITH and JAMES ZARLEY<br><br>*Defendant(s)*<br>and VALUECLICK, INC.,<br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. **CV13-09024 - BRO(JEMx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DAVID S. BUZBY, JAMES A. CROUTHAMEL, JOHN GIULIANI, MARTIN HART, JAMES R. PETERS, JEFFREY F. RAYPORT, BRIAN A. SMITH and JAMES ZARLEY
30699 RUSSELL RANCH ROAD, SUITE 250
WESTLAKE VILLAGE CA 91362

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
GREEN & NOBLIN, P.C.
700 Larkspur Landing Circle, Suite 275
Larkspur, CA  94939
(415) 477-6700

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  DEC - 6 2013  _____

**ANDRES PEDRO**

*Signature of Clerk or Deputy Clerk*

1202

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                          *Server's signature*

                                                     _____
                                                          *Printed name and title*


                                                     _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| NANCY JEAN HOLT, derivatively on behalf of VALUECLICK, INC. | DAVID S. BUZBY, JAMES A. CROUTHAMEL, JOHN GIULIANI, MARTIN HART, JAMES R. PETERS, JEFFREY F. RAYPORT, BRIAN A. SMITH and JAMES ZARLEY, |

| (b) County of Residence of First Listed Plaintiff   Harris, TX | County of Residence of First Listed Defendant   Los Angeles, CA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| James Robert Noblin (State Bar No. 114442)    (415) 477-6700<br>GREEN & NOBLIN, P.C.<br>700 Larkspur Landing Circle, Suite 275<br>Larkspur, CA 94939 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Shareholder derivative action for breach of fiduciary duty and other claims. 28 USC § 332.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☒ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

CV13-09024

| FOR OFFICE USE ONLY:     Case Number: | |
|---|---|
| CV-71 (11/13) | CIVIL COVER SHEET     Page 1 of 3 |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded **or** closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the **present** case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions **of law** and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by **different** judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _~signature~_  DATE: December 6, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace **nor** supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more **detailed** instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits **under** Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on **disability** under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon **disability** filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title **2 of** the Social Security Act, as amended. (42 U.S.C. 405 (g)) |